**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT WEEKS,** | ) | |
| No. N22850, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 15-cv-00459-MJR** |
| | ) | |
| **FRANK EOVALDI,** | ) | |
| **C/O SLAVENS,** | ) | |
| **W. SPILLER,** | ) | |
| **C/O EASTON, and** | ) | |
| **SGT. HEIMAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Robert Weeks is an inmate currently housed in Pontiac Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to the conditions of his confinement and treatment while he was housed at Menard Correctional Center in October 2013.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted

if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

<u>**The Complaint**</u>

According to the complaint, Plaintiff Weeks arrived at Menard in the late afternoon on October 4, 2013. Minutes after his arrival, C/O Slavens escorted Plaintiff to the healthcare unit. Plaintiff was interviewed by a nurse, with Sgt. Frank Eovaldi present. The nurse explained that Planitiff's psychiatric medications would commence the next day; nevertheless, Plaintiff asked the nurse if he could speak with a mental health professional. The nurse told Plaintiff that he would be seen by a mental health professional the next day. The nurse then left and Sgt. Eovaldi summoned C/O Slavens.

Before C/O Slavens arrived back in the health care unit, Eovaldi told Plaintiff that he was going to make Plaintiff's time at Menard "miserable as hell." Eovaldi and Slavens subsequently undressed Plaintiff—at times holding Plaintiff down on the ground by placing a knee on his back as his arms were uncuffed and his jumpsuit was removed. Plaintiff, naked, was then walked back to his cell by Eovaldi, Slaven and C/O Easton. Plaintiff's cuffed hands were held up high, and Eovaldi told Plaintiff to hold his head down so he would not be recognized. Plaintiff describes feeling dehumanized, humiliated, terrified, embarrassed and degraded, as he walked naked down the cellhouse gallery.

Upon arrival at Plaintiff's cell, Sgt. Eovaldi ordered C/O Easton to remove the mattress, after which Plaintiff was placed in the cell. Although Plaintiff was not offering any resistance,

Eovaldi "aggressively" jerked Plaintiffs arms through the door slot as the cuffs were being removed.  Sgt. Eovaldi then stated that Plaintiff was being placed on a "crisis watch," which entails noting Plaintiff's activity every 15 minutes.  Plaintiff objected, noting that he had not said he was suicidal.  Plaintiff also contends that his cell was not one of the cells specially designated as a crisis watch cell, so Sgt. Eovaldi was violating prison policies and procedures.  It is also asserted that Sgt. Eovaldi, Sgt. Heiman, C/O Slavens, C/O Spiller and C/O Easton all knew his cell was not a crisis watch cell, and Heiman, Slavens, Spiller and Easton also knew what Eovaldi was doing, as they had previously aided and abetted Eovaldi in his "evil behavior" toward other prisoners.   Plaintiff contends that Sgt. Eovaldi was retaliating against him for asking to see a mental health professional.

On October 6, Plaintiff wrote to various prison officials seeking relief, all to no avail. The next day, Plaintiff spoke to Sgt. Heiman and C/O Spiller, explaining what Sgt. Eovaldi had done, and asked them to check to see if he was actually on crisis watch.  They checked and reported that Plaintiff was not on crisis watch.  Since he was not on crisis watch, Plaintiff requested a mattress, bedding, underwear, a jumpsuit, shoes, towels and hygiene items.  Heiman and Spiller walked away, but they returned later and escorted Plaintiff to the clothing supply room.  Plaintiff takes issue with having to walk without shoes.

Plaintiff returned to his cell with the clothing and towels, but C/O Spiller only allowed him to take a jumpsuit and boots inside the cell, hanging the other items in a bag outside the cell. He was also still without a mattress.  Later that evening, Plaintiff wrote to Lt. Cartwright, explaining what had happened.  The next day, on October 8, had a mattress given to Plaintiff, and allowed Plaintiff to have his bag of clothes and towels.

Plaintiff seeks declaratory judgment, compensatory and punitive damages, release from segregation and restoration to A-grade status.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** **Defendants Eovaldi, Spiller and Easton unnecessarily paraded Plaintiff naked, in violation of the Eighth Amendment;**

> **Count 2:** **Defendants Eovaldi, Spiller and Easton used excessive force against Plaintiff, in violation of the Eighth Amendment;**

> **Count 3:** **In retaliation for Plaintiff asking to see mental health staff, Defendant Eovaldi had Plaintiff held under unwarranted "crisis watch" conditions, in violation of the First Amendment, Eighth Amendment, and prison policy and procedures;**

> **Count 4:** **Defendants Heiman, Slavens, Spiller and Easton all either aided and abetted, or conspired with Defendant Eovaldi relative to the violations at issue in Count 3;**

> **Count 5:** **Defendants Heiman and Spiller, knowing that Plaintiff had actually not been on crisis watch, failed to give him a mattress and all of the clothing and towels he was entitled to, and made him walk barefoot, all in violation of the Eighth Amendment.**

## Discussion

## Count 1

Count 1, regarding Plaintiff being paraded to his cell naked, states a colorable claim and shall proceed against Defendants Eovaldi, Spiller and Easton. *See King v. McCarty*, 781 F.3d 889, 896-98 (7th Cir. 2015) (recognizing such a claim).

**Count 2**

Count 2 pertains to the allegations that Defendants Eovaldi, Spiller and Easton used excessive force against Plaintiff when he was forcibly undressed, walked to his cell with his arms held high, and aggressively uncuffed.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).  Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety.  *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). When prison officials are accused of using excessive force against an inmate, "[t]he claimant must show that officials applied force 'maliciously and sadistically for the very purpose of causing harm.' " *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Hudson v. McMillian*, 503 U.S.1, 6 (1992)).

None of the allegations upon which this claim is based are characterized as amounting to excessive force, although some force is described.  As described, the use of a knee to hold Plaintiff down while his arms are uncuffed so his jumpsuit can be removed, the discomfort of holding his head down and arms high, and how his hands were jerked as he was uncuffed, were all *de minimis*—trivial—uses of necessary force, reasonably exerted.  There are also no allegations of more than modest discomfort.  Therefore, as pleaded, Count 2 fails to state a colorable Eighth Amendment claim.  *See generally  Lewis v. Downey*, 581 F.3d 467, 475-76 (7th Cir. 2009).  Count 2 will be dismissed without prejudice.

**Count 3**

Count 3 envelopes the allegations that Sgt. Eovaldi, in retaliation for Plaintiff asking to see mental health staff, and without other cause to do so, had Plaintiff placed in a "crisis watch" cell—a cell that was not an officially designated crisis watch cell, and which caused Plaintiff to not have clothes, towels, a mattress and bedding for three or four days.

In terms of the alleged retaliatory motive, Plaintiff has failed to state a colorable First Amendment claim. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000). In order to state a claim for retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006). Asking to speak to mental health staff is not protected speech, so the retaliation aspect of Count 3 will be dismissed with prejudice.

The fact that Plaintiff's cell was not one of the officially designated crisis watch cells may violate prison policy, but such a violation cannot be brought under 42 U.S.C. § 1983. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a *constitutional* deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (emphasis added). This aspect of Count 3, therefore, must be dismissed with prejudice.

The allegation that Sgt. Eovaldi—after threatening to make Plaintiff's time at Menard "miserable as hell"—housed Plaintiff naked in a cell stripped of a mattress and bedding for three

or four days when he was *not* on crisis watch falls with the parameters of the Eighth Amendment.  Therefore, this aspect of Count 3 shall proceed against Sgt. Eovaldi.

## Count 4

Although the Eighth Amendment claim in Count 3 against Sgt. Eovaldi for unnecessarily placing Plaintiff naked in a strip cell is proceeding, the related claims in Count 4 against Defendants Heiman, Slavens, Spiller and Easton fail.   The complaint only describes these four defendants as having aided and abetted Eovaldi in "evil behavior" toward other inmates.  All that is at issue in this case is what occurred to Plaintiff Weeks.  At best, there is a bald assertion that Heiman, Slavens, Spiller and Easton knew what Eovaldi was doing.  This mere assertion is insufficient to state a claim under the *Twombly* pleading standard.

Insofar as Plaintiff may be suggesting a conspiracy, he has failed.  Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review.  *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).   "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him."  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011).  "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."  *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

Count 4 will be dismissed without prejudice.

**Count 5**

Count 5 alleges that Defendants Heiman and Spiller, knowing that Plaintiff had actually not been on crisis watch, failed to give him a mattress and all of clothing and towels he was entitled to, in violation of the Eighth Amendment.

On October 6, when Plaintiff asked Defendants Heiman and Spiller to check to see if Plaintiff really was on crisis watch, they did so, returning to report that he was not on crisis watch.  When Plaintiff requested they get him a mattress, bedding, clothing and hygiene items, they took him to get everything but the mattress and hygiene items.  They allowed Plaintiff to take a jumpsuit and boots into his cell, but the bedding and other clothing items were placed in a bag outside the cell.   Whether Heiman and Spiller were deliberately indifferent to Plaintiff's basis needs is debatable, so this aspect of Count 5 shall proceed against them.

Plaintiff's objection to having to walk to the clothing room barefoot does not rise to the level of an Eighth Amendment violation.  This aspect will be dismissed without prejudice.

**Remedies**

Insofar as Plaintiff seeks release from segregation and return to A-grade status, those remedies are wholly unrelated to the allegations in the complaint, and unavailable to him, now that he has been transferred from Menard.  Those aspects of the prayer for relief will be dismissed.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** against Defendants **FRANK EOVALDI, W. SPILLER and C/O EASTON** shall **PROCEED.**

**IT IS FURTHER ORDERED** that **COUNT 2** against Defendants **FRANK EOVALDI, W. SPILLER and C/O EASTON** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the First Amendment retaliation claim and allegation of a violation of prison policy within **COUNT 3** are **DISMISSED with prejudice**; the Eighth Amendment conditions of confinement claim in **COUNT 3** shall proceed against Defendant **FRANK EOVALDI**.

**IT IS FURTHER ORDERED** that **COUNT 4** against Defendants **SGT. HEIMAN, C/O SLAVENS, W. SPILLER and C/O EASTON** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the allegation regarding walking barefoot is **DISMISSED without prejudice** from **COUNT 5**; **COUNT 5** shall otherwise **PROCEED** against Defendants **SGT. HEIMAN and W. SPILLER**.

**IT IS FURTHER ORDERED** that, because no claims remain against him, Defendant **C/O SLAVENS** is **DISMISSED without prejudice** from this action.

The Clerk of Court shall prepare for Defendants **FRANK EOVALDI, W. SPILLER, C/O EASTON and SGT. HEIMAN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.   If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **FRANK EOVALDI, W. SPILLER, C/O EASTON and SGT. HEIMAN** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 19, 2015**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**